Daniel, J.
 

 The plaintiffs’ justices’ executions were issued in the life time of Crain, and they were levied on the land after his death, but before the return days of the said executions. Were the said levies by the constable good in law ? If a sheriff have in his hands
 
 aJi.fa.
 
 issued from a court of record, tested before the death of the defendant in it, he may both levy and sell the land, after the death of the defendant, if he do it before the return day.
 
 Bowen v. McCullough,
 
 N. C. Term, Rep. 261.
 
 Wood
 
 v.
 
 Harrison,
 
 1 Dev. & Bat. 356. But if the sheriff levies on land, and does not sell it before the return term, and the defendant dies, then a
 
 venditioni
 
 cannot issue to sell it before the heirs are made parties by
 
 scire facias. Samuel
 
 v.
 
 Zachery,
 
 4 Ired. 377. But it is said, that under a justice’s execution, the land is bound only from the time of levy by the constable. That is true.
 
 Lash
 
 v.
 
 Gibson,
 
 1 Mur. 266.
 
 Ellars v. Ray,
 
 2 Hawks, 568. But by the act of Assembly, (Rev. Stat. c. 268, s. 16,) the
 
 personal
 
 property of the defendant, in a justice’s execution, is bound only from the levy. Yet this court has decided,
 
 (McCarson
 
 v.
 
 Richardson,
 
 1 Dev. & Bat. 561,) that if the defendant die after the
 
 teste
 
 of such execution, and before the levy, his administrator is bound thereby, and the goods in his hands may be levied upon and sold, without a
 
 scire facias
 
 to revive the
 
 *283
 
 judgment. The court furthermore said, that the act of 1828 was passed
 
 only
 
 for the protection of purchasers from the defendant in the execution. In this State, the rule of the common law, as to the lien of a
 
 fi.fa.
 
 upon chattels, has been extended to land, when sought to be subjected by that writ.
 
 Ricks
 
 v. Blount, 4 Dev. 128. But in favor of purchasers from the defendant in the execution, and also in favor of other execution creditors, who may first levy on it, the land is not bound until the levy is actually made by the officer, under a justice’s execution. If the defendant in a justice’s execution die after the issuing thereof, and before the return day, then his heir at law cannot stand in a better situation, to resist the constable’s right to levy on the land, (which was the defendant’s at the
 
 teste
 
 of the execution) than the administrator can since the act of 1828, as to the chattels. When in such cases the land is levied on, and the proceedings are returned into court for an order of sale, as the act of assembly of 1828 requires the officer to serve the defendant with notice in writing, at least five days before the term to which the execution is returnable, although the act has not in so many words declared, that if the defendant in the execution should die, that the said notice should then be served on the heir or devisee; still, we think it is so clearly within the meaning of the Legislature, that the heir should be notified, .that we must construe it, as if such words were actually inserted in the act, in order to carry out the evident meaning of the Legislature. The notice to the heirs was in the nature of a
 
 scire
 
 facias, and
 
 perhaps,
 
 on the return of it into court, they might have shewn that there was personal property, which the constable knew of and might have levied on, sufficient to satisfy the debt; or, they, as heirs, might have shown that they had a right to retain their own debt against the land, or any other proper matter to induce the court to stay the order of sale. In England, by the statute of Frauds, 29 Car. 2, it is enacted, that no writ of
 
 fie-ri
 
 facias, or other writ of execution, shall bind the property of the goods of the party against whom such writ of execu
 
 *284
 
 tion issued forth) but from the time that such writ shall be delivered to the sheriff. But, notwithstanding, the courts of that country decided that the statute was passed solely to protect purchasers, and that the goods are bound as against the defendant and his representatives, as they were at the common law from the
 
 teste ;
 
 and, therefore, goods of a testator in the hands of his executor, may be taken on a
 
 fi. fa.
 
 against his testator bearing
 
 teste
 
 before his death.
 
 Bragner
 
 v. Langmead, 7 T. R. 20.
 
 Wagborne
 
 v.
 
 Langmead,
 
 1 Bos. & Pul. 571. Watson on Sheriffs, 176, 177.
 

 We have seen that, in this State, the general rule as to the lien under a
 
 fieri facias
 
 upon chattels and lands, stands upon the same footing. Then as the act of 1828 binds personal property only from the levy, in favor of purchasers, and not in favor of the executor or administrator, so we must now declare that the decisions, which have heretofore been made in this State, that the constable’s levy on land under a justice’s execution, bound the land only from the levy, were made only to protect purchasers from the defendant in the execution, and also such execution creditors, as had made a prior levy, although under a junior execution. The heir must stand, as his ancestor, the defendant in the execution, did, with the exception of the privilege of pleading a retainer, &c. on the return into court of the notice to him to shew cause why the order of sale should not be made. The argument for the defendant is founded on the omission in our statutes to give a
 
 scire facias
 
 against heirs, except upon a judgment first had against the administrator, and on the further circumstance that at common law an action of debt would not lie against the heir on a justice’s judgment. But the inference does not follow, that therefore there is no direct remedy against the lands ofthe deceased debtor, but only through the circuitous route of a suit on the judgment against the administrator. Why should the administrator be sued? It is only for the protection ofthe heir by having the personal estate applied first to the satisfaction of the debt. Now, the very levy by the constable implies and affirms that there is no personal estate; and, being mad®
 
 *285
 
 in the life time of the ancestor, either actually, or, in legal contemplation, by relation, that fact is established against the heir, because it was established against the ancestor. But suppose the return of the constable not tobe conclusive on that point, and that it is open to the heir to shew that there are personal assets in the hands of the administrator — a point not now necessary to be decided, and on which we express no opinion — ■ it does not follow, that the administrator
 
 must
 
 be sued in the first place; but only that the heir may plead that there are personal assets, and, if it be so found, that the creditor cannot have execution of the lands. It is true that in such case he could not have execution against the administrator, as provided by the statute upon a verdict on the issue taken by the heir upon the point of assets, because the administrator would not be a party in any way to the proceeding. To proceed in this way against the heir would, therefore, be at a risk to the creditor of paying cost; whereas, if he brought in the administrator, and then the heir, according to our statute, he must have execution against the administrator or the land descended, for both debt and costs. Then, no possible injury can be sustained by the heir by such a proceeding; for either he may avail himself of the prior liability of the personal estate, or, if not, it is only because his ancestor was concluded on that point. Therefore, the creditor by judgment against the ancestor ought not to be compelled to go through all the forms of an origina^ writ, before he can touch the debtor’s land. And although our acts do not give any original action against the heir, and at the common law he is only liable
 
 in debt
 
 upon the ancestor’s obligation, in which he bound theheir, and not on a judgment, yet the creditor is not remediless upon such judgment against the heir and all others, the terre-tenants, to subject the lands to execution.
 
 Sir William Hobart's case,
 
 3 Rep. 12, 2 Saund. Rep. 7, Note 4. For the law will not deprive the creditor of the benefit of his lien on the land by the death of the debtor. Such would be the case, if the judgment were in a court of record. Within the same reason is the lien created
 
 *286
 
 by the levy of a justice’s execution in the ancestor’s life time. Suppose, for exampie, that this levy had in fact been made and returned before Crain died, and that notice had been given to bim, what reason, founded in justice or law, can be assigned for putting a full stop to that suit, annulling the levy and lien on the land, and turning the creditor back to anexv suit against the administrator, and leaving him no better off than a simple contract creditor ? It stands precisely on the principle on which the common law gives the
 
 scieri facias
 
 on a judgment against the terre-tenants; and the creditor is entitled to have satisfaction out of the lands levied on, as a fund specially appropriated, as against the ancestor and the heir, to that purpose. It is not material whether the heirs could have pleaded personal assets or not. If they could, they did not; and judgment was taken against them to sell the land levied on, and the execution refers to and enforces that levy; and it is not for another creditor to dispute its propriety, who comes in afterwards.
 

 We are of opinion that the judgment of the Superior Court should be reversed, and that the judgment of the County Court should be affirmed.
 

 Pek Curiam, Judgment accordingly.